UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

JAMES PREWITT,

    Debtor.                                               No. 7-12-12682-TR

CHARLIE DANBOM and
LISA DANBOM,

    Plaintiffs,

v.                                                     Adv. No. 12-1293-T

JAMES PREWITT,

    Defendant.

## MEMORANDUM OPINION

In this adversary proceeding Plaintiffs seek to have Defendant's debt declared nondischargeable under 11 U.S.C. §§ 523 (a)(2), (a)(4), and/or (a)(6). The Court conducted a trial on July 11, 2013 and took the matter under advisement. This is a core matter. For the reasons set forth below, the Court declares the amount of $12,496.37 nondischargeable under § 523(a)(4).

### I. *FACTS*

The Court finds the following facts:

1. Defendant is a mechanic. At one time he owned a repair shop called Prewitt Mobile Service.

2. In the summer of 2005, Plaintiffs engaged Defendant to repair their skid loader (the "Skid Loader").

3. Defendant also repaired Plaintiffs' Chevrolet Tahoe (the "Tahoe") and John Deere Tractor (the "Tractor").

4. Defendant did not issue any invoices to Plaintiffs in connection with any of the repairs.

5. On or about September 16, 2005, Defendant received an insurance settlement check in the amount of $8,011.59 from Plaintiffs' insurer, Farm Bureau Mutual Insurance Co. The check was jointly payable to Prewitt Mobile Service and Charlie or Lisa Danbon [sic].

6. The check was to pay for repairs to the Skid Loader, which had been damaged in a fire.

7. On or about September 21, 2005, Defendant or his agent signed Charles Danbom's name on the check without Plaintiffs' knowledge or authority, and presented it for payment.

8. The insurance proceeds were deposited into Defendant's bank account.

9. When Plaintiffs learned that Defendant deposited their check, the parties agreed that Defendant could retain their insurance proceeds provided he used them to repair the Skid Loader.

10. Defendant purchased roughly $4,000 worth of parts for the Skid Loader and performed about 25% of the necessary repairs before abandoning the project. Some of the parts were installed while others remain in boxes on Defendant's property.

11. Defendant did not remit any of the insurance proceeds to Plaintiffs or repair the Skid Loader.

12. The Skid Loader is still located on Defendant's property.

13. When Plaintiffs attempted to contact Defendant about the status of the repairs and the disposition of the insurance proceeds, he ceased communication with them.

14. In October, 2009, Defendant began working for Catepillar, Inc. Defendant signed a non-compete agreement with Catepillar, which prevents him from working on the Skid Loader.

15. On March 8, 2012, Plaintiffs obtained a default judgment in state court against Defendant in the amount of $12,496.37, of which $4,484.78 was for interest and fees.

16. Defendant filed the above-captioned bankruptcy case on July 17, 2012.

## II. *DISCUSSION*

A. *§ 523(a)(4)*

Debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" are excepted from the general discharge.[1] 11 U.S.C. § 523(a)(4). A creditor may prove embezzlement by showing: (1) his property was entrusted to the debtor; (2) the debtor appropriated the property for a use other than the use for which it was entrusted; and (3) the circumstances indicate fraud. *Bd. of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 644 (6th Cir. 2007)). *See also Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988) (embezzlement consists of "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."). Larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner." *Hernandez v. Musgrave (In re Musgrave)*, 2011 WL 312883, *5 (10th Cir. BAP 2011) (quoting 4 Collier on Bankruptcy ¶ 523.10[2], 523-77 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2009)).

Embezzlement differs from larceny in that "[e]mbezzled property is originally obtained in a lawful manner, while in larceny the property is unlawfully obtained." *Musgrave,* 2011 WL

---

[1] There is no evidence that Defendant held the insurance proceeds pursuant to an express or technical trust. Consequently, the exception relating to defalcation while acting in a fiduciary duty is not applicable. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir. 1996) (Under Tenth Circuit law, a fiduciary relationship exists only where a debtor has been entrusted with money pursuant to "an express or technical trust.").

312883, *5. Claims involving forgery and joint checks are generally analyzed in the context of embezzlement rather than larceny. *See, e.g., Doran Services, Inc. v. Valentine (In re Valentine),* 104 B.R. 67, 71 (Bankr. S.D. Ind. 1988) (debtor's conduct constituted embezzlement for purposes of § 523(a)(4) where debtor forged the joint payee's signature and embezzled insurance proceeds); *Bulington Industries, Inc. v. Wilson (In re Wilson),* 114 B.R. 249, 252-253 (Bankr. E.D. Cal. 1990) (analyzing whether debtor's unilateral endorsement of a jointly payable insurance check constituted embezzlement under § 523(a)(4)); *cf Holt v. Salyer (In re Salyer),* 2012 WL 725843, *5 (Bankr. E.D. Tenn. 2012) (debt was predicated upon embezzlement for the purposes § 523(a)(4) where plaintiff entrusted money to debtor and debtor forged plaintiffs' names on certain checks).

Here, Defendant lawfully possessed the insurance check as a joint payee. Either he, or an agent acting at his direction, signed Mr. Danbom's name and fraudulently diverted the funds to his bank account. Defendant then used the proceeds for purposes other than repairing the Skid Loader, thus depriving Plaintiffs of the opportunity to use the money to hire another mechanic.

Defendant's protestation that he did not forge Mr. Danbom's signature is not credible. Defendant admitted to signing his name, the letters "PMS," and his account number on the check. However, he testified that he has no recollection of how Mr. Danbom's signature appeared immediately above his own. Mrs. Danbom testified that neither she nor any member of her family signed the check, or even knew that the check had been sent before it was deposited by Defendant. Based on these facts, the Court is drawing the reasonable inference that Defendant or his agent forged Mr. Danbom's signature in order to embezzle Plaintiffs' insurance proceeds.

-4-

The debt arising from the state court judgment is therefore nondischargeable under § 523(A)(4).[2]

B. *Settlement or Ratification*

Defendant asserts that, because Plaintiffs knew he cashed their insurance check but continued to do business with him, they consented to or otherwise ratified any alleged fraud. This argument is unavailing. Plaintiffs did not make a gift of their insurance proceeds. Instead, they agreed to let Defendant keep the embezzled funds provided he repaired the Skid Loader.

Reducing a fraud claim to settlement does not change the nature of the debt for dischargeability purposes. *Archer v. Warner*, 538 U.S. 314, 321 (2003). As the Supreme Court explained, "[t]he dischargeability provision applies to all debts that arise out of fraud.… A debt embodied in the settlement of a fraud case arises ... out of the underlying fraud...." *Id.* at 321 (citations and internal quotations omitted). Because the settlement "work[s] a kind of novation," the aggrieved party may pursue a nondischargeability action against the debtor if he fails to fulfill his obligations under the agreement. *Id.* at 323.

Numerous courts have applied the reasoning of *Archer* to other categories of nondischargeable debt. *See, e.g., Giaimo v. DeTrano* (*In re DeTrano),* 326 F.3d 319, 322 (2nd Cir. 2003) (noting that debts arising out of the settlement of embezzlement claims are nondischargeable under § 523(a)(4)); *Bauer v. Colokathis (In re Colokathis)*, 417 B.R. 150, 158 (Bankr. D. Mass. 2009) (debt arising from a settlement agreement was nondischargeable where the underlying conduct formed the basis of a § 523(a)(6) claim); *Musich v. Graham (In re Graham),* 455 B.R. 227, 233 (Bankr. D. Colo. 2011) (extending *Archer* to claims under §

---

[2] Having made such a determination, the Court need not reach the issue of whether the debt is also nondischargeable under §§ 523(a)(2) or (a)(6).

523(a)(6)). As both § 523(a)(2) and § 523(a)(4) deal with fraudulent conduct, this Court finds that *Archer* applies to claims for embezzlement under § 523(a)(4).

Here, Defendant embezzled Plaintiffs' insurance funds, agreed to repair the Skid Loader in order to rectify the fraud, and failed to fulfill his end of the bargain. Had Plaintiffs' embezzlement claim been litigated to judgment at the time Defendant embezzled the funds, it would have created a nondischargeable debt under § 523(a)(4). Under *Archer,* Defendant may not replace this potential liability with a dischargeable contractual obligation through the parties' agreement.

C. *Offset Claims*

Defendant also seeks to offset the amount of any nondischargeable judgment by the cost of: (1) repairs performed on the Tahoe and/or the Tractor; (2) labor performed on the Skid Loader; and (3) any parts purchased for the Skid Loader.

It is unclear how much money, if any, Plaintiffs owe Defendant in connection with the Tahoe and/or the Tractor. Mrs. Danbom testified that she paid for substantially all of the repair work on those vehicles. Defendant did not testify as to the amount owed, nor did he offer any records in evidence. It is equally unclear how much labor Defendant performed on the Skid Loader. Although Defendant testified that he completed roughly 25% of the necessary repairs, the Court cannot determine how much money, if any, he is owed as a result. Therefore, Defendant is not entitled to an offset for that work.

There is evidence that Defendant purchased roughly $4,000 worth of parts for the Skid Loader. Nevertheless, Defendant is not entitled to an offset for those expenditures. Pursuant to the parties' agreement, Plaintiffs' insurance proceeds were to be used to *repair* Plaintiffs' Skid Loader. Instead, Defendant installed some of the parts before relegating the unfinished machine

-6-

to his shop-yard. Since the Skid Loader has been exposed to the elements for roughly 8 years, the parts may not even be salvageable.

D. *Interest & Fees*

When a debt is nondischargeable under § 523(a), the accompanying interest and fees are likewise nondischargeable. *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996). *See also Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1131 (8th Cir. 1985) (noting that attorney's fees and interest attached to primary debt and are nondischargeable); *Cago, Inc. v. Slade (In re Slade),* 471 B.R. 626, 645 (Bankr. D. N. M. 2012) ("[N]on-dischargeable debt includes interest…."). Consequently, the full amount of the state court judgment, which includes $4,484.78 in interest and fees, is nondischargeable under § 523(a)(4).

### III. *CONCLUSION*

Defendant's obligations to Plaintiffs will be declared nondischargeable under § 523(a)(4) to the extent of $12,496.37. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. An appropriate judgment will be entered.

                                                Honorable David T. Thuma
                                                United States Bankruptcy Judge

Date entered on docket: August 12, 2013.

Copies to:

Charlie Danbom
Lisa Danbom
1820 South Roosevelt Road AN
Elida, NM 88116

Eric D Dixon
301 South Avenue A.
Portales, NM 88130-6288